D|F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

YOUTH ALIVE, CANDACE ROJAS, and
DAVID DAVILA,

                      Plaintiffs,

      -against-

HAUPPAUGE SCHOOL DISTRICT, BOARD
OF EDUCATION OF THE DISTRICT,
PATRICIA LESSER, Board Member, ANN
MACALUSO, Board Member, STEVE
BURTON, Board Member, EILEEN MASS,
Board Member, GERI RICHTER, Board
Member, ROBERT SCHNEBEL, Board Member,
GINGER TODARO, Board Member, PATRICIA
SULLIVAN-KRISS, Superintendent,
CHRISTINE O'CONNOR, Principal, and
MICHAEL CAULIN, Assistant Principal,

                      Defendants.
------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-1068 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

      Before the court are cross-motions for summary judgment as to Plaintiffs' claim that Defendants' refusal to provide Youth Alive with a paid advisor violates the Equal Protection Clause. Having considered the parties' supplemental briefing on this issue, the court DENIES both motions, but DISMISSES Plaintiffs' claim without prejudice for lack of standing.

**I.    FACTUAL BACKGROUND**

      The court assumes the reader's familiarity with the court's Memorandum and Order that ruled on the majority of the summary judgment issues and set out the background of this case in detail. (Sept. 30, 2011, Mem. & Order (Docket Entry # 41) ("Summ. J. Order").)

1

Plaintiff Youth Alive is an unincorporated Bible club that meets after school hours at Hauppauge High School ("HHS"). (56.1 Statement (Docket Entry # 48) ¶¶ 9, 74.) Plaintiff Candace Rojas founded Youth Alive in 2005; Plaintiff David Davila served as president in the 2007-08 school year.[1] (Id. ¶¶ 12, 15, 43-47.)

Plaintiffs allege that Youth Alive was not afforded the same privileges as non-religious extra-curricular student groups in violation of the Equal Access Act, 20 U.S.C. § 4071, the Free Speech and Free Exercise Clauses of the First Amendment, as applied to the states through the Fourteenth Amendment, and the Equal Protection Clause of the Fourteenth Amendment. (Compl. (Docket # 1) at 11-15.) As an initial matter, it is undisputed that when Plaintiffs sought to form Youth Alive, (1) Defendants were initially reluctant permit them to do so (56.1 Statement ¶¶ 36-37, 41-43); (2) the club's information was not immediately placed on HHS's website (id. ¶¶ 48-50); and (3) Plaintiffs were not informed that student organizations could utilize a school-controlled bank account (id. ¶¶ 58-59).

HHS has a general policy that student group meetings must be supervised. (Id. ¶ 60.) But because Defendants concluded that Hauppauge School District ("District") cannot pay Youth Alive's advisor without violating the Equal Access Act, they required that a volunteer oversee Youth Alive's meetings. (Id. ¶¶ 61-64.) If this advisor cannot attend a particular meeting, then HHS Principal Christine O'Connor or another staff member supervises the

---

[1] In response to the court's directive (see Summ. J. Order at 2 n.1), Plaintiffs provided the affidavit of Elaine Temple, Youth Alive's president for the 2011-12 academic year, to prove that Youth Alive still has standing to pursue injunctive and declaratory relief in light of Rojas's and Davila's graduation from HHS (see Temple Decl. (Docket # 61)). But since Ms. Temple only affirmed that she held office for the 2011-12 academic year, she might have graduated from HHS this past spring. However, it is unnecessary for Plaintiffs to submit an affidavit of a current student and Youth Alive member because the court lacks jurisdiction over this claim for other reasons discussed below.

meeting so that it is not cancelled.² (Id. ¶ 62.) When any other club's paid advisor cannot attend a meeting, the meeting is cancelled without any attempt by the school to find a replacement. (Id. ¶ 63.)

## II. PROCEDURAL HISTORY

Plaintiffs filed suit on March 14, 2008. (Compl.) On April 6, 2009, the court granted in part and denied in part Defendants' motion to dismiss, ruling that with respect to the events surrounding Youth Alive's initial formation, placement of its information on the District's website, and its access to the student organization bank account, Plaintiffs could not obtain injunctive and declaratory relief but could only seek nominal damages. (Apr. 6, 2009, Mem. & Order (Docket Entry # 24) at 13.)

On December 22, 2010, the parties cross-moved for summary judgment. (Pl. Summ. J. Mem. (Docket Entry # 50); Def. Summ. J. Mem. (Docket Entry # 43).) The court denied Plaintiffs' motion in its entirety. (Summ. J. Order at 15-16.) As to Plaintiffs' claims based on the events concerning Youth Alive's formation, Defendants' motion was granted insofar as Plaintiffs sought injunctive and declaratory relief; Plaintiffs were allowed to continue their pursuit of nominal damages for these Free Exercise, Free Speech, and Equal Protection claims at trial. (Id. at 17.) As to the denial of a paid advisor, Defendants' motion for summary judgment was granted as to the Equal Access, Free Exercise, and Free Speech claims but denied as to the Equal Protection claim. (Id. at 11-15.)

The court directed the parties to submit supplemental briefing to aid its determination of whether Defendants' continuing refusal to provide Youth Alive with a paid advisor violates the

---

² Although the parties stipulated otherwise, Rojas testified in her deposition that Youth Alive had to cancel meetings at least three times when the unpaid advisor failed to appear. (See Rojas Dep. (Docket # 53-2) at 11:6-15; see also Summ. J. Order at 12.)

Equal Protection Clause. Specifically, the court asked the parties to address whether a plaintiff "need only show that she has been classified differently than a similarly situated group, or if she must also show that the challenged classification has had an observable 'adverse' effect." (Summ. J. Order at 14-15.) The parties have submitted such briefing. (Pl. Supp. Summ. J. Mem. (Docket Entry # 61); Pl. Supp. Summ. J. Reply Mem. (Docket Entry # 64); Def. Supp. Summ. J. Mem. (Docket Entry # 59); Def. Supp. Summ. J. Reply Mem. (Docket Entry # 62).)

## III. DISCUSSION

Although the parties were not directed to address whether Plaintiffs have standing to pursue their claim challenging Defendants' denial of a paid advisor, the court must assure itself of its jurisdiction. See Mayer v. Mayer, No. 11-CV-6385 (ENV) (SMG), 2012 WL 441182, at *2 (E.D.N.Y. Feb. 10, 2012). Even though the court may decide the issue of standing sua sponte, see id., the court still appreciates the parties' supplemental briefing because it addresses the substance, if not the form, of the issue.

The test for constitutional standing requires a plaintiff to show: (1) an injury-in-fact, that is, an actual or imminent, and concrete and particularized, invasion of some legally protected interest of the plaintiff's; (2) a fairly traceable causal connection between the actions of the defendant and the injury-in-fact; and (3) a likelihood that a favorable decision will redress plaintiff's complained-of injury. See Lujan v. Defenders of Wildlife, 505 U.S. 555, 560-61 (1992). "[S]tanding must be demonstrated 'for each claim and form of relief sought.'" Kiryas Joel Alliance v. Village of Kiryas Joel, No. 12-CV-217, 2012 WL 3892744, at *3 (2d Cir. Sept. 10, 2012) (quoting Baur v. Veneman, 352 F.3d 625, 641 n.15 (2d Cir. 2003)).

The injury-in-fact requirement is relaxed in the Equal Protection context. "'[S]tanding is created by the denial of equal treatment resulting from the imposition of a barrier, not the

ultimate inability to obtain the benefit.'" Fitzgerald v. Thompson, No. 07-CV-6851 (BSJ), 2009 WL 29599, at *6 (S.D.N.Y. Jan. 5. 2009) (citation omitted). For instance, the Supreme Court in Gratz v. Bollinger, 539 U.S. 244 (2003), found that the plaintiff, who was denied admission to a university as a freshman applicant, had standing to challenge a university's discriminatory policies even though he did not later apply for admission as a transfer student because the policies operated as a "barrier" to his admission. Id. at 261-62. Analogously, with respect to a state program that sets aside certain government contracts for minority-owned businesses, "the 'injury in fact' is the inability to compete on an equal footing in the bidding process, not the loss of contract." Ne. Fla. Chapter, Associated Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 666 (1993).

Although the injury-in-fact requirement is not as stringent in Equal Protection cases, a plaintiff must still establish that she suffered *some* sort of identifiable harm. For instance, in Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 701 F. Supp. 2d 568 (S.D.N.Y. 2010), a religious corporation's leaders brought Equal Protection claims against numerous towns because of zoning regulations that allegedly delayed the development of a religious center. Id. at 574-77. The court dismissed these plaintiffs' claims for lack of standing because they "failed to allege that they have personally suffered any injury from the delay." Id. at 583. Whether it's a barrier or an unequal playing field that affects a plaintiff's pursuit, she must identify some disadvantage to meet the constitutional requirement of standing.[3] Cf. Parents Involved in Cmty. Sch. v. Seattle

---

[3] Although determination of a plaintiff's standing is, by definition, independent of any evaluation on the merits, the elements of an equal protection claim underscore this court's holding. See, e.g., Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 312 (1976) ("[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly *interferes* with the exercise of a fundamental right or operates to the *peculiar disadvantage* of a suspect class." (emphases added) (footnotes omitted)); Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (requiring a plaintiff to show "adverse treatment"); Perez v. Metro. Transp. Auth., No. 11-CV-8655 (RWS), 2012 WL 1943943, at *9 (S.D.N.Y. May 29, 2012) ("Because the Complaint fails to establish an *adverse* employment action, Plaintiff has failed to state an equal protection claim." (emphasis added)).

Sch. Dist. No. 1, 551 U.S. 701, 720 (2007) ("[O]ne form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may *prejudice* the plaintiff . . . ." (emphasis added)).

Here, Plaintiffs have not suffered any injury sufficient to confer standing for their Equal Protection claim based on Defendants' failure to provide a paid advisor. The use of an unpaid supervisor to monitor Youth Alive meetings has had no discernible effect on Plaintiffs' ability to exercise their First Amendment rights.[4] (See Summ. J. Order at 12-13.) Plaintiffs speculate that a paid advisor would be less likely to cancel meetings than an unpaid advisor, which, in theory, could affect their rights to free speech and exercise of religion. (See Pl. Summ. J. Mem. at 9-10.) But the parties stipulated that, unlike all other clubs, if Youth Alive's unpaid supervisor cannot attend a meeting, Defendants provide a substitute volunteer to supervise the students. (56.1 Statement ¶ 62.) Youth Alive, then, very well may be able to conduct *more* meetings than non-religious clubs. In any event, the evidence shows at most three cancelled meetings (see Rojas Dep. at 11:6-15), which is comparable to clubs with paid advisors (see id. at 11:16-18; 56.1 Statement ¶ 63; Def. Summ. J. Opp'n Mem. (Docket Entry # 52) at 3 (citing O'Connor Dep. at 44)). Thus, unlike the plaintiffs in Gratz and Jacksonville, Youth Alive and its members operate on the same, if not an advantageous, playing field and do not face any barrier that impedes their ability to obtain any benefit. See also Vaughn v. Consumer Home Mortg. Co., Inc., 470 F. Supp. 2d 248, 266 (E.D.N.Y. 2007) (dismissing for lack of standing absent proof of "a barrier in any real sense to any plaintiff's ability to obtain [a] benefit"); cf. Comer v. Cisneros, 37 F.3d 775, 794 (2d Cir. 1994) (holding that equal protection claimants had standing where they were denied "the missed opportunity" to compete for suburban housing on "an equal footing").

---

[4] Plaintiffs have not alleged any mental anguish or pain and suffering resulting from Defendants' alleged discrimination. (Cf. Compl.)

Plaintiffs argue that they "are entitled to [nominal] damages even assuming [they] ha[ve] not proven injury in the form of adverse effect or injury." (Pl. Supp. Summ. J. Mem. at 4.) That is inconsistent with standing doctrine, and with good reason; if Plaintiffs were correct that they could establish standing based merely on differential treatment, a party that *benefited* from a classification would, in theory, be able to challenge its validity. Such a result would fundamentally contradict the principle of standing. Cf. Janes v. Triborough Bridge and Tunnel Authority, No. 06-CV-1427 (PAE), 2012 WL 177420, at *4-5 (S.D.N.Y. Jan. 23, 2012) (dismissing putative plaintiffs' equal protection claims for lack of standing because "[r]ather than facing the prospect of future injury, these individuals st[ood] to benefit from the differential toll policy [and] therefore d[id] not have the requisite 'personal stake in the outcome' of any decision as to injunctive or declarative relief").

As Defendants note, the claimants in all of the cases cited by Plaintiffs either suffered some tangible harm or were inhibited in the exercise of their constitutional rights because of the classification at issue. For instance, in Irish Lesbian and Gay Organization v. Giuliani, 143 F.3d 638 (2d Cir. 1998), upon which Plaintiffs heavily rely, the claimants were denied a parade permit. Id. at 643. The Second Circuit reinstated the plaintiff's complaint because it alleged that the organization was "den[ied] First Amendment rights," which also resulted in reputational harms. Id. at 649-50. Here, as discussed above, Plaintiffs were not denied any opportunity to express themselves, and have not alleged any similar resulting injury.

In Smith v. Coughlin, 748 F.2d 783 (2d Cir. 1984), Plaintiffs' other principal authority, the court ruled that a prisoner's Sixth Amendment rights were violated when his lawyer's paralegal was refused entry to the prison. Id. at 789. After deciding this constitutional issue, the court held that "even when a litigant fails to prove actual *compensable* injury, he is entitled to an

7

award of nominal damages *upon proof of a violation* of a substantive constitutional right." Id. (emphases added). In Smith, unlike here, the plaintiff did suffer an identifiable harm: a violation of his Sixth Amendment rights. Id.; see also Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136 (1987) (denial of unemployment benefits); Carey v. Piphus, 435 U.S. 247, 266 (1978) (denial of a suspended student's right to respond in a hearing); Dunn v. Blumstein, 405 U.S. 330, 339 (1972) (application residency requirement that hindered rights to vote and travel); Gibeau v. Nellis, 18 F.3d 107, 110 (2d Cir. 1994) (excessive force); Ruggiero v. Krzeminski, 928 F.2d 558, 563 (2d Cir. 1991) (illegal search of home); Birnbaum v. United States, 588 F.2d 319, 333-34 (2d Cir. 1978) (illegal search of mail); Davis v. Vill. Park II Realty Co., 578 F.2d 461, 463 (2d Cir. 1978) (chilled First Amendment rights); Balakrishnan v. Kusel, No. 08-CV-1440 (BMC), 2009 WL 1291755, at *8 (E.D.N.Y. May 8, 2009) (doctor's certificate of qualification withheld for four and one half years); Hiller v. Cnty. of Suffolk, 199 F.R.D. 101, 105-06 (E.D.N.Y. 2001) (denial of employment opportunity); Island Online, Inc. v. Network Solutions, Inc., 119 F. Supp. 2d 289, 299 (E.D.N.Y. 2000) (denial of requested Internet domain names); Brown v. Stone, 66 F. Supp. 2d 412, 417-18 (E.D.N.Y. 1999) (counterclaim filed against mental health patients who sued the State).

To be sure, a number of courts have suggested that a plaintiff's *failure* to show differential treatment along suspect lines precludes heightened review. See, e.g., Nordlinger v. Hahn, 505 U.S. 1, 10 (1992) ("[U]nless a classification warrants some form of heightened review because it jeopardizes exercise of a fundamental right or categorizes on the basis of an inherently suspect characteristic, the Equal Protection Clause requires only that the classification rationally further a legitimate state interest."); Mackenzie v. City of Rockledge, 920 F.2d 1554, 1559-60 (11th Cir. 1991) ("The plaintiff has failed to show that others similarly situated were treated

differently."); Williams v. Hissong, 679 F. Supp. 2d 954, 965-66 (N.D. Ill. 2009) ("Plaintiff points to no similarly situated individuals who were treated differently or more favorably than himself."). But these cases only address what is necessary to meet the substantive elements of an Equal Protection claim, not what is sufficient to meet the constitutional requirement of standing. None of these courts held that a plaintiff had standing absent any infringement of a constitutional right or actual harm. These passing references cannot mean that a plaintiff has standing to pursue an Equal Protection claim when state action leaves her no worse off. Such a result would eliminate the injury-in-fact requirement for standing in Equal Protection cases entirely.

## III. CONCLUSION

The parties' cross-motions for summary judgment are DENIED. Plaintiffs' Equal Protection claims seeking monetary, injunctive, and declaratory relief for Defendants' failure to provide a paid advisor are DISMISSED without prejudice for lack of standing. The parties are instructed to confer and contact the court's case manager to schedule a pre-trial conference to address the remaining triable issues.

SO ORDERED.

Dated: Brooklyn, New York
October 12, 2012

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge